IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUARRA STONE COMPANY, LLC,

                              Plaintiff,                      OPINION AND ORDER

   v.

                                                               13-cv-790-slc

YALE UNIVERSITY,
THE WHITING-TURNER CONTRACTING COMPANY
and CAP STONE ROCK PRODUCTS, LLC,

                              Defendants.

---

       In this civil diversity action, plaintiff Quarra Stone Company, LLC alleges that defendant Cap Stone Rock Products, LLC breached a 2006 Exclusivity Agreement concerning the provision of stone for a project involving the Payne Whitney Gymnasium on the Yale University campus when it agreed in late 2013 to supply the stone directly to Yale without going through Quarra. Quarra further accuses Yale of tortiously interfering with the Exclusivity Agreement and conspiring to circumvent it with Cap Stone and their co-defendant, The Whiting-Turner Contracting Company.

       In an order entered January 29, 2014, this court denied Yale's motion to dismiss for lack of personal jurisdiction, denied Yale and Whiting-Turner's motion to dismiss for lack of venue, and denied Quarra's motion for a preliminary injunction. Dkt. 60. Defendants now move for dismissal of Quarra's complaint under Fed. R. Civ. P. 12(b)(6). Dkt. 61. According to defendants, the plain and unambiguous language of the Exclusivity Agreement establishes that it does not apply to the project at issue in this case. Alternatively, they argue that 1) even if the court determines the Agreement is ambiguous, it must be construed against Quarra because Quarra drafted it; and 2) the Exclusivity Agreement was void *ab initio* because it is vague and indefinite. For reasons stated below, I am rejecting these arguments and denying the motion.

Two preliminary procedural matters must be addressed before turning to the merits. First, Quarra argues that the motion, at least as to defendants Yale and Whiting-Turner, should be dismissed under Fed. R. Civ. P. 12(g)(2) on the ground that it is a prohibited "successive" motion that should have been consolidated with the earlier motions to dismiss filed by these parties. As defendants point out, however, the rule that a party who seeks dismissal under 12(b) must include all grounds in that motion or find them waived applies only to the defenses listed in Rule 12(b)(2)-(5) (lack of personal jurisdiction, improper venue, insufficient process and insufficient service of process). It does *not* apply to motions filed under 12(b)(6). Fed. R. Civ. P. 12(h)(1); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

Second, in their briefs addressing defendants' motion to dismiss, both sides have supported their respective positions by referring to matters extrinsic to the complaint. Generally, when ruling on a 12(b)(6) motion, the court examines only the allegations in the complaint to determine whether they are sufficient to state a cause of action. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). When a defendant's Rule 12(b)(6) motion presents matters outside the pleadings, the court may either exclude the matters outside the pleadings or convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Procedurally, this case is somewhat unusual because the parties already have filed numerous pieces of evidence in connection with Quarra's motion for a preliminary injunction, and that is the evidence to which they refer in their submissions. Nonetheless, neither side has asked the court to convert defendants' 12(b)(6) motion into a motion for summary judgment. Accordingly, I have considered the motion as filed, confining my review to the complaint and

the Exclusivity Agreement attached thereto.  In addition, I have taken judicial notice of certain facts adduced during the preliminary injunction proceeding that are not in dispute and are key to understanding the parties' respective positions, namely:

- in 2006, Yale retained Hillier Architecture to complete a design for renovating the exterior of the PWG;

- in 2009, the project was tabled because of a lack of funding;

- in January 2011, Yale retained Wiss, Janney, Elstner Associates, Inc. to prepare new design documents for the exterior renovation of the PWG;

- WJE's proposed project is smaller in scope than Hillier's; and

- WJE, not Hillier, is the architect currently involved in the PWG renovation.

*See Ennega*, 677 F.3d at 773 (court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment); 5A Wright & Miller, Federal Practice and Procedure § 1357 (2d ed. 1990) (noting that court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting 12(b)(6) motion into motion for summary judgment).  Apart from these limited facts, I have not considered the affidavits or deposition testimony to which the parties refer in their submissions.

Accepting the allegations in plaintiff's complaint as true, as supplemented by the undisputed facts of record, I find the facts to be as follows for the purposes of deciding the instant motion:

**FACTS**

In 2006, Yale University issued a request for bids to conduct restoration work on the Payne Whitney Gymnasium, a historic stone-clad building on its campus. Hillier Architecture was the firm that had been hired by Yale to create the design for this work. Quarra approached Cap Stone to suggest a joint effort to secure this work, whereby Quarra would use its contacts, expertise and creative effort to qualify Cap Stone's stone and to secure the stone supply and fabrication work for the PWG project. In exchange, Quarra asked for Cap Stone's commitment to work exclusively with Quarra on the project. Cap Stone agreed and signed an exclusivity agreement with Quarra in December 2006, appointing Quarra as its exclusive distributor. Complaint, dkt. 1, Exh. A.

> The Agreement reads as follows:
>
>> This document confirms Quarra Stone LLC to be the exclusive distributor of CAPstone Rock Products sandstone(s) for the Yale Payne Whitney Gymnasium Addition building project in New Haven, CT, USA. All inquiries originating from any other source conceivably relating to this project or to this stone will be directed to Quarra Stone, LLC. Architects chosen for this project are Hillier Architects. Scope is presently unknown. Prices would be $17/CF for standard quarry blocks.
>>
>> CAPstone Rock Products has engaged Quarra Stone LLC as its exclusive distributor of sandstone in reference to the Yale Payne Whitney Gymnasium building project in New Haven, CT. USA. All inquiries related to this project or to this stone will be directed to Mr. James Durham, Quarra Stone Company, LLC, 4301 Robertson Road, Madison, Wisconsin, 53714, USA. Tel. 608-246-8803, Fax. 608-246-8894. jdurham@quarrastone.com

The Agreement was signed on behalf of Cap Stone by Scott Elliott on December 18, 2006.

Quarra was never awarded a bid for the stone work on the PWG as designed by Hillier because the project was tabled in 2009 due to a lack of funding.

In January 2011, Yale retained a different architecture firm, Wiss, Janney, Elstner Associates, Inc. (WJE), to prepare new design documents for the exterior renovation of the PWG. WJE proposed—and Yale accepted—a project that was smaller in scope than Hillier's proposal. This time the project moved forward, and in early 2013, Quarra won the stone supply and fabrication contract for Phase I of the project, using Cap Stone's stone.

In mid-October 2013, after successfully completing the Phase I work, Quarra submitted its bid for the Phase II work, again using Cap Stone's material. Rather than award the bid to Quarra, however, Yale awarded the work to a different fabricator and contracted directly with Cap Stone for the quarry block. Quarra contends that in contracting directly with Yale, Cap Stone breached its Exclusivity Agreement with Quarra.

OPINION

## I. The Contract is Ambiguous

Defendants insist that Quarra's claims fail under the plain and unambiguous terms of the contract. "If the terms of the contract are plain and unambiguous, it is the court's duty to construe the contract according to its plain meaning even though a party may have construed it differently." *Woodward Commc'ns, Inc. v. Schockley Commc'ns Corp.*, 2001 WI App 30, ¶ 9, 240 Wis.2d 492, 498, 622 N.W.2d 756, 759-760. Thus, if a contract is unambiguous and the plaintiff's claims are unmerited under its terms, then dismissal of the complaint is appropriate under Fed. R. Civ. P. 12(b)(6). *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991) (terms of a written contract prevail over pleadings). If, on the other hand, the contract is facially ambiguous, then dismissal is not appropriate. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992).

5

Whether a contract is ambiguous is a question of law. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). "A contract is ambiguous when its terms are reasonably susceptible to more than one interpretation." *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 177, 557 N.W.2d 67 (1996). Stated another way, "[a] contract is ambiguous '... (w)hen the language of a contract, considered as a whole, is reasonably or fairly susceptible to different constructions[.]'" *Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.*, 84 Wis. 2d 1, 5, 267 N.W.2d 13, 14 (1978) (ellipses and parenthetical in original, quoted source).

According to the defendants, the only reasonable reading of the Exclusivity Agreement is that it applies only to (1) an addition to the PWG (2) that was designed by Hillier Architects. Thus, posit defendants, because the complaint fails to allege that either of these conditions applies to the current work on the PWG whence this dispute arises, the complaint states no claim.

Defendants' argument with respect to the term "Addition" is unpersuasive. First, the complaint *does* allege that the current work on the PWG involves an addition:

> The PWG project developed to include both a renovation and a major expansion of the existing building. Phase I, just completed, involved the construction of a 57,000-square-foot addition that houses four basketball courts and a running track. Phase II of the project will include an extensive renovation of the existing building and construction of a 24,000-square-foot exercise/weight training facility and six new international squash courts.

Complaint, dkt. 1, ¶18.

Second, to the extent that defendants argued in their initial brief that the term "Addition" could only have been referring to Yale's 1999 "Master Plan" which called for the

construction of a new natatorium (which indisputably the current project is not), that argument rests upon extrinsic evidence that is disputed. *See* dkt. 62, Defs.' Mem. of Law in Supp. of Mot. to Dismiss, at 6 (referring to Aff. of Stephen M. Brown). Further, as Quarra points out, Yale's understanding of what the term "Addition" meant is irrelevant to what Quarra and Cap Stone understood.

Defendants strike closer to the mark with their argument that, in order to give effect to all the words in the Agreement and avoid rendering portions of it meaningless, the sentence "Architects chosen for this project are Hillier Architects" must be read as a limiting term that restricts the parties' agreement to the PWG project as designed by Hillier. Indeed, it is reasonable to conclude from this sentence that at the time the parties entered into the agreement, the "PWG building project" that they had in mind was the specific building project designed by Hillier, and that no one expected the agreement to encompass exterior stone work on the building that was designed by a different architect about five years later.

On the other hand, there is room reasonably to argue—as Quarra does—that the parties intended the reference to Hillier to be descriptive, rather than prescriptive. The Agreement does not use the words "designed by" Hillier; it merely says "Architects chosen for this project are Hillier Architects." Further, the Agreement does not state what would happen if Hillier ceased being the project architect, nor does it suggest that the Agreement would terminate if Yale postponed the project or retained another architect to come up with a scaled-down plan for the work. Indeed, the Agreement expressly states that the scope of the project was "presently unknown." Finally, as Quarra points out, the second paragraph of the Agreement makes no reference to Hillier at all, but states more broadly that Cap Stone had engaged Quarra as its

7

exclusive distributor "in reference to the Yale Payne Whitney Gymnasium project in New Haven, CT." Reading the document as a whole, Quarra's proposed construction is a reasonable one: the reference to Hillier merely describes the project as it existed at that time and was not meant to limit the scope of the parties' agreement.

Accordingly, because the Agreement is reasonably susceptible to more than one interpretation, it is ambiguous.

Defendants argue as a fallback that even if the Agreement is ambiguous, Quarra loses as a matter of law because it drafted the contract. The rule that ambiguities in contract terms must be construed against the drafter (a.k.a., *contra proferentem*), is a canon of contract construction that Wisconsin courts employ to resolve ambiguities in contracts, with some cases seemingly suggesting that it is the go-to rule whenever a contract is ambiguous. *See, e.g., Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 24, 233 Wis. 2d 314, 607 N.W.2d 276; *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 506, 577 N.W.2d 617 (1998); *Dairyland Equip. Leasing, Inc. v. Bohen*, 94 Wis. 2d 600, 609, 288 N.W.2d 852 (1980).

As other cases make plain, however, *contra proferentem* is a "default rule" that applies "only in the event of an unresolvable ambiguity—a tie—and only at the end of the process after extrinsic evidence has failed to clear up the question." *Roth v. City of Glendale*, 2000 WI 100, ¶¶ 50–51, 237 Wis. 2d 173, 614 N.W.2d 467 (Sykes, J., concurring); *see also In re Marriage of Peterson v. Bauer*, 2014 WI App 1, 352 Wis. 2d 247, 841 N.W.2d 581 (because circuit court could determine parties' intent by examining extrinsic evidence, it did not need to resort to default rule that ambiguities are construed against drafter); *Wauzeka Heating & Cooling LLP v. Doll*, 2009 WI App 141, 321 Wis. 2d 476, 774 N.W.2d 475 (applying rule of *contra proferentem*

only after finding installment contract for installation of HVAC units contained ambiguity that could not be resolved by extrinsic evidence); *RA Mortgage & Fin. Co. v. Fedler*, 2004 WI App 205, 276 Wis. 2d 863, 688 N.W.2d 783 ("[W]e may not apply this tie-breaker rule of contract construction when there has been no factual resolution by a fact finder regarding extrinsic evidence."); *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 609 (7th Cir. 1993) ("A completely intractable issue of contract interpretation can be resolved only by the application of some default rule—a burden of persuasion, a clear-meaning rule, a presumption based on the authorship of the contract. But the time to throw up one's hands and apply such a rule is *after* extrinsic evidence has been considered.") (emphasis in original).

Where, as in this case, the parties were of equal bargaining power and both were able to negotiate terms that resolved any potential ambiguities in the Agreement, it is particularly inappropriate to apply the default rule before examining the extrinsic evidence. *See, e.g., Gorton*, 217 Wis. 2d at 506, 577 N.W. 2d at 623 (noting that interpreting ambiguities against drafter applies especially "where a substantial disparity of bargaining power exists between the parties or a standard form is supplied by the drafting party"). Accordingly, defendants are not entitled to dismissal merely because Quarra drafted the contract.[1]

---

[1] The court's conclusion that it is necessary to examine the extrinsic evidence to determine the parties' intent does not necessarily entitle Quarra to a jury trial. If, after discovery is complete, defendants have a good faith basis to believe that the extrinsic evidence is so one-sided that no reasonable juror could find in Quarra's favor, then it may move for summary judgment. *See BV/B1, LLC v. InvestorsBank*, 2010 WI App 152, ¶ 19, 330 Wis.2d 462, 472, 792 N.W.2d 622, 628 ("Summary judgment is not appropriate when the issue turns on the terms of an ambiguous contract and the contracting parties' intent is both: (1) not clear, and (2) disputed.")

**II. The Agreement is not Void for Indefiniteness**

Finally, defendants argue that the fact that Quarra and Cap Stone have different understandings of the Agreement's scope means that the contract is void as a matter of law for indefiniteness. This is not necessarily so. If a mere disagreement about the scope of a contract were enough to render a contract indefinite, then "juries would rarely be called upon to interpret a contract, because nearly every contract challenged in court would be void for indefiniteness." *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 181, 557 N.W.2d 67, 77 (1996). *See also Colfax Envelope Corp. v. Local No. 458-3M*, 20 F.3d 750, 752 (7th Cir. 1994) ("Most contract disputes arise because the parties did not foresee and provide for some contingency that has not materialized—so there was not meeting of the minds on the matter at issue—yet such disputes are treated as disputes over contractual meaning[.]").

Rather, "[i]t is common for contracting parties to agree—that is to *signify* agreement—to a term to which each party attaches a different meaning," preferring to gamble in this way rather than attempt to iron out all their possible agreements, many of which may not be material. *Colfax Envelope*, 20 F.3d at 754. In other words, it is not necessary that the parties subjectively agree to the same interpretation at the time of contracting in order for the definiteness requirement to be met and a valid contract to be formed. *Mgmt. Computer Servs.*, 206 Wis. 2d at 178, 557 N.W. 2d at 75. Where, as here, the parties each claim to have different understandings of what they agreed to, the question the tribunal must answer is whose understanding is most reasonable under the express terms of the contract, *not* whether a contract was formed in the first place. *Id*.

## ORDER

IT IS ORDERED that defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)6), dkt. 61, is DENIED.

Entered this 27th day of March, 2014.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge